681 F.Supp. 615 (1987)
DONELAN PHELPS & COMPANY, INC., Donelan Phelps & Company, a Missouri partnership, Thomas E. Phelps and Patrick M. Donelan, partners; Thomas E. Phelps and Patrick M. Donelan, individually; and Arthur Bourey, Plaintiffs,
v.
UNITED STATES of America, Defendant and Counterclaimant,
v.
Cynthia KRETMAR, Counterclaim Defendant.
Arthur BOUREY, Plaintiff,
v.
UNITED STATES of America, Defendant.
Nos. 86-1228C(A), 86-1231C(A).
United States District Court, E.D. Missouri, E.D.
October 29, 1987.
*616 Joseph F. Devereux, Jr., Dennis M. Devereux, Robert L. Devereux, St. Louis, Mo., for all other plaintiffs.
Philip G. Kaplan, Theodore D. Ponfil, St. Louis, Mo., for plaintiff Arthur Bourey.
Robert D. Metcalfe, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S.
Philip G. Kaplan, Theodore D. Ponfil, St. Louis, Mo., for counterclaim defendant Cynthia Kretmar.

MEMORANDUM OPINION
HARPER, District Judge.
Plaintiffs in the above two cases (and plaintiff, Dan Neidballa, in Cause No. 86-1587C(2), previously dismissed), brought an action against the defendant seeking a refund of Federal taxes paid, an abatement of the remaining taxes assessed against them, and attorneys' fees.
The United States counterclaimed for the balance of the assessments against plaintiffs, and brought an action against Cynthia Kretmar for the tax assessment made against her. Subsequently, Niedballa and the Government dismissed their actions against each other. After having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the stipulation of the parties, this Court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

STIPULATED FINDINGS OF FACT
1) The Court's jurisdiction over the actions is based on 28 U.S.C. § 1346(a)(1), as these are civil actions against the United States for the recovery of a penalty claimed to have been collected without authority under the Internal Revenue laws.
2) The plaintiff, Donelan Phelps & Company, Inc., is a Delaware corporation, whose principal offices are located at 7800 Bonhomme, St. Louis County, Missouri, and which is authorized to do business in the State of Missouri.
3) The plaintiff, Donelan Phelps & Company, is a Missouri general partnership, having Patrick M. Donelan and Thomas E. Phelps as partners, and whose principal offices are located at 7800 Bonhomme, St. Louis County, Missouri.
4) The plaintiff, Thomas E. Phelps, is an individual residing in St. Louis County, Missouri, and at all times relevant to the present action was an employee of Donelan Phelps & Company, Inc., and a partner of Donelan Phelps & Company.
5) The plaintiff, Patrick M. Donelan, is an individual residing in St. Louis County, Missouri, and at all times relevant to the present action was an employee of Donelan Phelps & Company, Inc., and a partner of Donelan Phelps & Company.
6) The plaintiff, Arthur Bourey, is an individual residing in St. Louis County, Missouri, *617 and at all times relevant to the present action was an officer and employee of Donelan Phelps & Company, Inc.
7) The counterclaim defendant, Cynthia Kretmar, is an individual residing in St. Louis County, Missouri, and at all times relevant to the present action was an officer and employee of Donelan Phelps & Company, Inc.
8) Port City Towing Company was a Mississippi corporation organized in 1957 and engaged in the business of transporting cargo by barge on the inland waterways of the United States.
9) Port City Barge Line, Inc., was a Mississippi corporation organized in 1959 and engaged in the business of transporting cargo by barge on the inland waterways of the United States.
10) Missouri Valley Shipyard, Inc., was a Kansas corporation organized in 1976 and engaged in the business of building and servicing towboats and barges.
11) During the first three taxable quarters of 1982, the Port City Towing Company, the Port City Barge Line, Inc., and the Missouri Valley Shipyard, Inc., withheld Federal withholding and Federal Insurance Contribution Act (FICA) taxes from the wages paid to its employees.
12) On September 9, 1985, a delegate of the Secretary of the Treasury made assessments against the plaintiffs, Donelan Phelps & Company, Inc., Donelan Phelps & Company, Thomas E. Phelps, Patrick M. Donelan and Arthur Bourey, and the counterclaim defendant, Cynthia Kretmar, for a penalty equal to the amount of the unpaid Federal withholding and Federal Insurance Contribution Act (FICA) taxes of the Port City Towing Company, the Port City Barge Line, Inc., and the Missouri Valley Shipyard, Inc., for the taxable periods indicated below:

Taxable Period Total
 Ending Company Amount Assessment
March 31, 1982 Port City Towing Co. $ 1,640.06
June 30, 1982 Port City Towing Co. 88,295.19
Sept. 30, 1982 Port City Towing Co. 99,505.40
 _________
 $189,440.65
June 30, 1982 Port City Barge
 Line, Inc. 10,510.12
Sept. 30, 1982 Port City Barge
 Line, Inc. 24,776.11
 _________
 35,286.23
March 31, 1982 Missouri Valley
 Shipyard, Inc. 61,282.66
June 30, 1982 Missouri Valley
 Shipyard, Inc. 53,135.74
Sept. 30, 1982 Missouri Valley
 Shipyard, Inc. 34,384.62
 _________
 148,803.02
 ___________
 Total $373,529.90

FACTS BASED ON HEARING BEFORE THE COURT
13) Donelan Phelps & Company, Inc. (hereinafter DPI) is a corporation owned by Donelan Phelps & Company (hereinafter Donelan Phelps). DPI provides consulting services.
14) In late 1981 and early 1982, Port City Towing Company, Port City Barge Lines, Inc., and Missouri Valley Shipyards, Inc., *618 as well as other related companies (hereinafter the Port City Companies) were owned by certain company employees and their families. The largest stockholder was John W. Baskin, the president of these companies. During this time, the Port City Companies underwent severe financial problems.
15) On February 16, 1982, the shareholders of the Port City Companies exchanged their interests in those companies for 49% of the shares in the newly formed Port City Barge Company. Niedballa and Donelan Phelps each paid $250,000.00 and received 25.5% of the holding company's shares. After the restructuring, Baskin and the other officers of the Port City Companies assumed positions in the holding company which were similar to those they had held in the Port City Companies. Also, Thomas E. Phelps personally guaranteed an equipment loan for $1,100,000.00 to the Port City Companies.
16) After the restructuring, Port City Barge Company "retained" DPI in a financial consulting arrangement whereby DPI attempted to reorganize the finances of the Port City Companies. The actual role of DPI there was to represent the interests of Donelan Phelps.
17) The immediate and overwhelming problem at the Port Companies was cash flow. (At that time, there had been a severe downturn in the demand for barge hauling throughout the region.) The principal role of DPI was to structure the companies' disbursement of cash to better match the inflow of cash. This meant that priority would be given to paying those creditors who were necessary for the continuing, day-to-day operation of the companies.
18) Thomas E. Phelps, Bourey and Kretmar involved themselves in negotiations with the creditors of the Port City Companies. Kretmar and Bourey became deeply involved in running the financial operations of the Port City Companies, to include developing schedules of when different creditors would be paid. While the credibility of the Government's witnesses, and of Baskin in particular, was questionable, and while the evidence indicates that the Donelan Phelps personnel did not exercise total control over the finances of the Port City Companies, there being several creditors paid without the authorization of Kretmar or Bourey, the plaintiffs have not convinced the Court that they did not exercise significant control over the financial operations of the Port City Companies. This Court also finds that the credibility of the plaintiffs, with the exception of Patrick M. Donelan, is also questionable. The Court specifically finds that Donelan Phelps, Thomas E. Phelps, DPI, Arthur Bourey and Cynthia Kretmar made significant financial decisions for the Port City Companies. The contentions of Donelan Phelps and Thomas E. Phelps that they were passive investors and the contentions of DPI, Bourey and Kretmar that they acted only as consultants, are rejected.
19) Patrick M. Donelan, individually, did not involve himself in the financial affairs of the Port City Companies.
20) By no later than July, 1982, Thomas E. Phelps, Bourey and Kretmar had learned that the Port City Companies had failed to deposit the Federal employment taxes that had been withheld from the employees' pay. They were aware of the continuing failure to deposit these taxes during the period from July, 1982 until the time Port City Companies ceased operations. They were aware of the requirement to deposit these withheld taxes.
21) Throughout these periods, sufficient funds existed in the accounts of the Port City Companies to pay the taxes.
22) Despite their knowledge of the tax liabilities and the ability of the Port City Companies to pay them, Thomas E. Phelps, Bourey and Kretmar continued to give disbursement priority to other creditors. While Thomas E. Phelps, Bourey and Kretmar investigated different avenues for payment of the taxes, such as signing over unencumbered assets of Port City Companies, or securing other financing from lenders, they chose not to employ the working capital of the Port City Companies to pay the Government. Thomas E. Phelps, Bourey and Kretmar consciously ignored an obligation *619 that they knew should have been paid and could have been paid.
23) Thomas E. Phelps, Bourey and Kretmar lost their ability to control the finances of the Port City Companies when its creditors seized control of operations in October, 1982.

CONCLUSIONS OF LAW
26 U.S.C. § 6672 states in pertinent part:
"(a) General Rule.  Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over."
"Corporate employers are required to withhold, from the wages of their employees, federal social security and income taxes. 26 USC 3102(a) and 3401(a). Such withheld taxes `shall be held to be a special fund in trust for the United States.' 26 USC 7501." Kizzier v. United States, 598 F.2d 1128, 1132 (8th Cir.1979). "If a corporate employer fails to pay these withheld amounts over to the government, then Section 6672 permits the government to look for payment from the person responsible." Anderson v. United States, 561 F.2d 162, 165 (8th Cir.1977). This person "may be liable personally for the penalty prescribed by § 6672 * * * if during the period involved he was a `responsible person' under § 6671(b), and if he acted `willfully.'" Hartman v. United States, 538 F.2d 1336, 1340 (8th Cir.1976). "Tax assessments are presumed to be correct * * *. The burden is upon the party assessed to prove that it was not a responsible person or that its failure to pay the taxes was not willful." Anderson, supra, at 165.
Thus, it must be first determined whether the plaintiffs sustained their burden of proof as to not being responsible persons. The courts give the term "responsible" a broad interpretation. In essence, one looks not to the office held, but rather, to "whether the person had control of the disbursements of the taxpayer, that is, whether `he had the final word as to what bills should or should not be paid and when.'" Id. Further, the word "final" means merely significant and not exclusive control over the disbursement of funds. Caterino v. United States, 794 F.2d 1, 5 (1st Cir.1986). Obviously, such "person need not be an officer, director, employee or shareholder of a company to be held accountable as a responsible party." Anderson, supra, at 165. Also, it need not be an individual; an artificial entity such as another corporation is included in the definition. Id. Logically, a person under this definition would include a partnership.
Plaintiffs vigorously argue that they were not responsible persons as contemplated by the statute. Regarding Patrick M. Donelan, this Court agrees. From the facts of the case it is apparent that he did not involve himself in the operation of the Port City Companies.
But this Court finds that Donelan Phelps, DPI, Thomas E. Phelps, Bourey and Kretmar were responsible parties. While it is true that none possessed any office with the Port City Companies nor had any check-writing authority there, this does not prevent the finding that they were responsible parties. Further, while the Court notes that the plaintiffs did not have exclusive control of the disbursement, this, too, does not absolve them.
Donelan Phelps invested $250,000.00 in the Port City Companies and assumed a 25.5% stake in the holding company. Additionally, Thomas E. Phelps personally guaranteed $1,100,000.00 in corporate debts. The officers of Port City Companies testified in detail as to the fact that Donelan Phelps assumed control of the finances after the February 16, 1982 restructuring. While plaintiff attacks the credibility of the government's witnesses, a credibility that this Court agrees was questionable, this Court also refuses to believe the story that Donelan Phelps sent its employees to Greenville, Mississippi solely in a consulting capacity. In considering the investment *620 of the partnership and the personal exposure of Thomas E. Phelps, it is highly improbable that a sophisticated businessman would let an investment and guarantee totaling $1,350,000.00 depend on the willingness of an autonomous third party to take advice. This Court could have accepted the contentions of Bourey and Kretmar that they, for a fee, merely assembled and organized data in order to assist the Port City Companies in meeting their obligations to creditors, but it did not. Instead, the Court found that Donelan Phelps, and Thomas E. Phelps in particular, sent DPI to Greenville with instructions for Bourey and Kretmar to take control and protect the investment. Finally, that Baskin and others were able to sneak money out of the Port City Companies does not mean that plaintiffs lacked significant control.
The cases upon which the plaintiffs rely are easily distinguished. This Court disagrees that Godfrey v. United States, 748 F.2d 1568 (Fed.Cir.1984) is similar to the case at bar. There, it was held that an outside director, who was also chairman of the board, but who did not have check-signing authority, did not participate in the day-to-day fiscal management of the corporation, did not control the payroll, did not determine which creditors would be paid and which would not, and did not own a significant fraction of the shares of the corporation, was not a responsible person. Id. at 1576. Here, Bourey and Kretmar frequently visited Greenville. While they were not involved in the day-to-day management, they certainly were involved in the week-to-week management of the finances. It was found that they did determine who would be paid and who would not. Finally, 25.5% is a significant fraction. Godfrey is no authority for concluding that these plaintiffs were not responsible persons.
Nor can Bourey and Kretmar escape liability by claiming that they were directed by their superiors to avoid depositing the withheld taxes. Such an excuse, which, it must be noted, was not articulated at trial, is ineffective in escaping liability. Roth v. United States, 779 F.2d 1567, 1572 (11th Cir.1986).
In sum, plaintiffs, Donelan Phelps, DPI, Donelan, Thomas E. Phelps, Bourey and Kretmar, had the burden of proof regarding the issue of whether or not they were responsible persons. With the exception of Patrick M. Donelan, all failed to convince this Court that they were not responsible parties.
As noted above, to be held liable, a responsible person's conduct in not paying the taxes must also be willful. "It is sufficient if the failure to pay the trust fund to the government was the result of conscious acts or omissions by the responsible person with knowledge of the existence of the taxpayer's obligation to make such payments." Anderson, supra, at 166. This "does not mean, however, that the person must act with evil or fraudulent intent." Hartman, supra, at 1341.
Here, the evidence is uncontradicted that from July until October, 1982, the plaintiffs were aware of the failure to pay the withheld taxes to the government. It is also uncontradicted that during this time the corporation had sufficient funds to pay over the taxes to the government. Further, as sophisticated investors, financial professionals and accountants, the plaintiffs knew the consequences of their failure to act. Despite this, plaintiffs continued to prefer creditors other than the government. This alone has been found sufficient, as a matter of law, to establish willfulness. Barnett v. United States, 594 F.2d 219, 222 (9th Cir.1979).
Plaintiffs argue that they attempted to secure additional funds from lenders in order to pay the taxes, but that they were unsuccessful. This does not erase willfulness from their conduct since, while paying these taxes with borrowed funds might have been the preferred business solution, the failure to obtain the funds while working capital was available is no excuse. Plaintiffs also contend that they urged Baskin to sign over unencumbered assets of the Port City Companies, but that he refused. Even if the Court were to accept this as true, as with the efforts to obtain a *621 loan, this does not negate the fact that plaintiffs preferred to use their working capital to pay creditors that kept the operation going instead of paying the taxes owed to the government. The simple fact is that the plaintiffs consciously chose to avoid paying the taxes from the only source of funds available.
In addition to a refund and an abatement, plaintiffs request an award of costs and attorney's fees as provided for in the Equal Access to Justice Act, 28 U.S.C. § 2412. The Government counters, noting that the Equal Access to Justice Act does not apply to actions when 26 U.S.C. § 7430 applies. 28 U.S.C. § 2412(e). But, in order to recover under this provision, the citizen must be a prevailing party. 26 U.S.C. § 7430(a). Therefore, the claims of all of the plaintiffs, except for Patrick M. Donelan, are rejected.
As for Donelan, he brought an action for a refund in both his individual capacity and as a partner in Donelan Phelps. He prevailed only in his individual capacity and, therefore, cannot recover attorney's fees and costs in the latter capacity.
In order for a prevailing party to be awarded judgment for reasonable litigation costs, he must establish that the position of the United States was not substantially justified. 26 U.S.C. § 7430(c)(2)(A)(i). A review of the record reveals that the Government's position was not. First, as to being a responsible person, there is no indication that Donelan had any authority in regards to the operation of the Port City Companies. Just because his partner and the partnership were such does not promote him to the same level of control. The record clearly reveals that the only contact that Donelan had with the Companies was when he attended a dinner party with the officers in Greenville, Mississippi. Secondly, even if this Court were to impute responsibility to Donelan, there is a total lack of evidence that his conduct regarding the taxes was willful. From the record, this Court cannot say that, at the relevant times, Donelan even was aware of the problem. Significant to this Court is the fact that at trial the Government made no effort to rebut Donelan's case. It did not even cross-examine him. However, this lack of evidence did not prevent the Government from charging in and imposing a substantial assessment on Donelan.
Donelan as an individual had no involvement in the management of the Port Cities Companies. The actions of the Government which caused him to bring this action were not substantially justified. Therefore, he is entitled to his reasonable litigation costs.
Accordingly, the Court orders that judgment will be entered in favor of the plaintiff, Patrick M. Donelan, on his claim for a refund of $300.00. The assessment imposed on him by the United States is abated. Further, the said Patrick M. Donelan will be awarded his reasonable litigation costs as provided for under 26 U.S.C. § 7430. Within twenty-one days from entry of judgment, Donelan shall submit an itemization of his individual litigation expenses. Within twenty-one days of this itemization, defendant, United States, will respond to it.
Further, it is ordered that judgment will be entered in favor of the defendant, United States, on the claims of plaintiffs, Donelan Phelps & Company, Inc., Donelan Phelps & Company, Thomas E. Phelps and Arthur Bourey, for a refund of taxes.
It is further ordered that judgment will be entered in favor of the defendant, United States, on its counterclaim against plaintiffs, Donelan Phelps & Company, Inc., Donelan Phelps & Company, Thomas E. Phelps and Arthur Bourey, and Counterclaim Defendant, Cynthia Kretmar, for the amount assessed, plus interest.
The clerk of the Court will prepare and enter the proper judgment in accordance with the findings of this Court.