876 F.2d 1373
 64 A.F.T.R.2d 89-5049, 89-1 USTC P 9373,
Unempl.Ins.Rep. CCH 14783A
 DONELAN PHELPS & COMPANY, INC., Donelan Phelps & Company, a
Missouri partnership, Thomas E. Phelps, Arthur
Bourey, and Cynthia P. Kretmar, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 88-1597, 88-1659EM.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 15, 1989.
Decided June 7, 1989.
Rehearing Denied July 18, 1989.
 
 Joseph F. Devereux, Jr., St. Louis, Mo., for appellants.
 David M. Moore, Washington, D.C., for appellee.
 Before FAGG and BEAM, Circuit Judges, and DUMBAULD*, Senior District Judge.
 DUMBAULD, Senior District Judge.
 In this case the District Court[1] found[2] that appellants, in their effort to rescue a group of financially distressed companies engaged in barge transportation on the inland waterways of the United States, had exercised significant control over the companies' disbursements, and had paid other creditors in preference to the Government's claim for unpaid taxes when there were funds available to pay such taxes, and hence were liable for the amount of said unpaid taxes pursuant to 26 U.S.C. 6672(a). We affirm.
 Millions of Americans to whom the name of Macy executive Beardsley Ruml is not a household word, are nonetheless beneficiaries (or victims, depending on the point of view) of the "pay as you go" system of tax collection in advance which at his suggestion the Congress adopted some years ago. Under this system tax is withheld by employers (recorded on the familiar W-2 forms) and the deductions from the employees' paychecks are in legal contemplation a fund held in trust for the Government[3] and should be paid over at specified intervals to the Government.
 The functioning of the system is lucidly explained by Justice Brennan in Slodov v. U.S., 436 U.S. 238, 242-45, 98 S.Ct. 1778, 1782-84, 56 L.Ed.2d 251 (1978):
 
 
 1
 Several provisions of the Internal Revenue Code require third persons to collect taxes from the taxpayer. Among the more important are 26 U.S.C. Secs. 3102(a) and 3402(a) ... which respectively require deduction from wages paid to employees of the employees' share of FICA taxes, and the withholding tax on wages applicable to individual income taxes. The withheld sums are commonly referred to as "trust fund taxes," reflecting the Code's provision that such withholdings or collections are deemed to be a "special fund in trust for the United States." 26 U.S.C. Sec. 7501(a) ... Because the Code requires the employer to collect taxes as wages are paid, Sec. 3102(a), while requiring payment of such taxes only quarterly, the funds accumulated during the quarter can be a tempting source of ready cash to a failing corporation beleaguered by creditors. Once net wages are paid to the employee, the taxes withheld are credited to the employee regardless of whether they are paid by the employer, so that the IRS has recourse only against the employer for their payment.
 
 
 2
 An employer who fails to pay taxes withheld from its employees' wages is, of course, liable for the taxes which should have been paid, Secs. 3102(b) and 3403. The IRS has several means at its disposal to effect payment of the taxes so withheld. First, once it has been determined that an employer has been inexcusably delinquent, the IRS, upon giving hand-delivered notice, may require the employer, thereafter, and until further notice, to deposit withheld taxes in a special bank trust account within two banking days after collection, to be retained there until required to be paid to the Treasury at the quarter's end. Sec. 7512. Second, with respect to trust funds past due prior to any such notification, the amount collected or withheld "shall be held to be a special fund in trust for the United States [and] [t]he amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose." 26 U.S.C. Sec. 7501. Thus there is made applicable to employment taxes withheld but not paid the full range of collection methods available for the collection of taxes generally.....
 
 
 3
 Third, penalties may be assessed against the delinquent employer. Sec. 6656 of the Code imposes a penalty of 5% of the underpayment of any tax required to be deposited, and 26 U.S.C. Secs. 7202 and 7215 provide criminal penalties respectively for willful failure to "collect or truthfully account for and pay over" trust-fund taxes.
 
 
 4
 Finally, as in this case, the officers or employees of the employer responsible for effectuating the collection and payment of trust-fund taxes who willfully fail to do so are made personally liable to a "penalty" equal to the amount of the delinquent taxes ...
 
 
 5
 Also, Sec. 7202 of the Code, which tracks the wording of Sec. 6672, makes a violation punishable as a felony ... Thus, an employer-official or other employee responsible for collecting and paying taxes who willfully fails to do so is subject to both a civil penalty equivalent to 100% of the taxes not collected or paid, and to a felony conviction. Only the application to petitioner of the civil penalty provision, Sec. 6672, is at issue in this case.
 
 
 6
 In implementation of this system, 26 U.S.C. 6672(a) provides, in pertinent part, that "any person required to ... pay over any tax ... who willfully fails to ... pay over such tax ... shall ... be liable to a penalty equal to the total amount of the tax ... not ... paid over."
 
 
 7
 The requirement that failure to pay over must be done "willfully" means that it was done voluntarily and with knowledge that thereby the funds held in trust for the Government will be used for other purposes.[4]
 
 
 8
 A person "required" to pay over (commonly called a "responsible person") need not be an officer or director or shareholder or employee or disbursing officer or payroll clerk of the trustee of the funds deducted from the employees' wages. It suffices that the person have significant control (not necessarily sole or final authority) over disbursement of the trustee's funds. Hartman v. U.S., 538 F.2d 1336, 1340 (8th Cir.1976); Anderson v. U.S., 561 F.2d 162, 165 (8th Cir.1977); Kizzier v. U.S., 598 F.2d 1128, 1132 (8th Cir.1979).
 
 
 9
 How do these rules apply to the facts of the case at bar?
 
 
 10
 The record discloses that a group of companies known as the Port City companies were engaged in an operation conducting barge transportation over inland waterways. These were the Port City Towing Company, the Port City Barge Line, Inc., and the Missouri Valley Shipyard, Inc. (which was a wholly owned subsidiary of Greenville Transportation Company, and which built and serviced towboats and barges). They were located in Greenville, Mississippi, and one John W. Baskin was president of each of them. They suffered financial problems in 1982 as a result of downturn in business. Baskin negotiated an agreement dated February 15, 1982, pursuant to which a new holding company, the Port City Barge company, was formed, 49 per cent. of whose stock was exchanged for the stock of the other companies, and 51 per cent. of which was issued to the providers of fresh capital.[5] One Dan Neidballa paid $250,000 for 25.5 percent. of the stock and the same sum was paid for the same proportion of stock by Donelan Phelps and Company, a partnership composed of Thomas E. Phelps and Patrick M. Donelan.[6] Donelan Phelps & Company, Inc. (hereinafter called DPI) was a Missouri corporation wholly owned by the partnership. Appellants Cynthia Kretmar and Arthur Bourey were employees of DPI.
 
 
 11
 During the first three quarters of 1982, withheld taxes amounting to $373,529.90, were retained by the Port City companies and not paid over to the Government (681 F.Supp. at 617).
 
 
 12
 After the corporate restructuring, DPI through its employees Phelps, Bourey and Kretmar managed the finances of the Port Cities companies so as to enable their continuance in business by giving priority in payment to those creditors who were necessary for the continuing day to day operation of the companies.
 
 
 13
 Kretmar or Bourey would customarily come from St. Louis to visit the Port City companies every week. They would talk with operating and accounting employees to ascertain the number of barges loaded to generate revenue, what bills needed to be paid to satisfy demands of creditors and keep the companies afloat, and prepare schedules listing bills to be paid. Centerre bank at St. Louis, upon which the Port City companies depended for credit, held various types of security, including pledge of the companies' accounts receivable. Upon receipt of the lists prepared by Kretmar or Bourey, Centerre would wire money to Greenville and checks would be released by the companies to creditors specified on the lists. By no later than July, 1982, Phelps, Bourey, and Kretmar had learned that the taxes had not been paid over to the Government. This knowledge continued until operations of the Port Cities Companies ceased in October, 1982, when Centerre bank seized control and commenced to collect debts due to it from the companies. During the period between July and October sufficient funds were available to pay over the withheld taxes, if they had not been used to pay other debts of the companies. (681 F.Supp. at 618-20).
 
 
 14
 As indicated by Justice Brennan in Slodov, 436 U.S. at 242, 98 S.Ct. at 1782 the IRS sometimes finds it in the interest of the government to permit a business to continue to operate on condition that current taxes be paid, with the hope of collecting later, when business improves, the delinquent taxes already due and owing, rather than insisting upon its pound of flesh up front with the risk of killing the goose that lays the golden eggs. No effort was made by appellants in the case at bar to follow this course. No arrangement was made with the IRS permitting payments to creditors necessary for continued operation in preference to the Government's claim for overdue taxes.
 
 
 15
 As cogently stated in Judge Harper's finding # 22:
 
 
 16
 Despite their knowledge of the tax liabilities and the ability of the Port City Companies to pay them, Thomas E. Phelps, Bourey and Kretmar continued to give disbursement priority to other creditors. While Thomas E. Phelps, Bourey and Kretmar investigated different avenues for payment of the taxes, such as signing over unencumbered assets of Port City Companies, or securing other financing from lenders, they chose not to employ the working capital of the Port City Companies to pay the Government. Thomas E. Phelps, Bourey and Kretmar consciously ignored an obligation that they knew should have been paid and could have been paid.[7]
 
 
 17
 These facts bring the appellants clearly within the rules set forth in the previously discussed case law regarding liability for failure to pay over withheld taxes to the Government.
 
 
 18
 Accordingly, the judgment of the District Court is
 
 
 19
 AFFIRMED.
 
 
 
 *
 The Honorable Edward Dumbauld, United States Senior District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 The Honorable Roy W. Harper, Senior District Judge, Eastern District of Missouri
 
 
 [2]
 Our review in this type of case is based on the "clearly erroneous" standard, especially where as here there were questions regarding the credibility of witnesses. Judge Harper's findings of fact (which, after careful review of the District Court record, we hold are not clearly erroneous) and his conclusions of law are reported at 681 F.Supp. 615 (E.D.Mo.1987)
 
 
 [3]
 26 U.S.C. 7501; Slodov v. U.S., 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978); Hartman v. U.S., 538 F.2d 1336, 1339-40 (8th Cir.1976)
 
 
 [4]
 Hartman v. U.S., 538 F.2d 1336, 1341 (8th Cir.1976); Kizzier v. U.S., 598 F.2d 1128, 1132 (8th Cir.1979); Burden v. U.S., 486 F.2d 302, 304 (10th Cir.1973), cert. denied 416 U.S. 904, 94 S.Ct. 1608, 40 L.Ed.2d 109 (1974)
 
 
 [5]
 Fresh capital was urgently needed, as the companies were faced with over $400,000 in overdrafts at Centerre bank
 
 
 [6]
 The District Court found that Donelan was not involved in operation of the Port Cities companies and was not responsible for any failure to pay over withheld taxes. 681 F.Supp. at 621. The Government does not press its appeal as to him. Similarly, by stipulation in a cognate suit filed by Neidballa the Government abandoned any claim against him. Plaintiffs-appellants used the technique of paying and bringing suit for refund of a token payment of a portion of the tax assessed. The Government counterclaimed, naming Cynthia A. Kretmar as an additional counterclaim defendant
 
 
 [7]
 681 F.Supp. at 618-19. The District Court, after weighing the credibility of the witnesses, and the arguments advanced by appellants, specifically found (681 F.Supp. at 618):
 that Donelan Phelps, Thomas E. Phelps, DPI, Arthur Bourey and Cynthia Kretmar made significant financial decisions for the Port City Companies. The contentions of Donelan Phelps and Thomas E. Phelps that they were passive investors and the contention of DPI, Bourey and Kretmar that they acted only as consultants, are rejected.