# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3163

_____

| | | |
|---|---|---|
| Roger Koehn, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa |
| Indian Hills Community College; | * | |
| James Lindenmayer, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  April 15, 2004

Filed:  June 9, 2004

_____

Before WOLLMAN, McMILLIAN and RILEY, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Roger Koehn appeals from a final order entered in the United States District Court[1] for the Southern District of Iowa granting summary judgment in favor of Indian Hills Community College (IHCC) and James Lindenmayer (together defendants) on his claims alleging wrongful discharge in violation of the First Amendment and state public policy. Koehn v. Indian Hills Community College,

_____

[1]The Honorable Ronald E. Longstaff, Chief Judge, United State District Court for the Southern District of Iowa.

No. 4-02-CV-10273 (S.D. Iowa Aug. 5, 2003) (hereinafter "slip op."). For reversal, Koehn argues that the district court erred in holding as a matter of law that Koehn did not engage in speech that is protected by the First Amendment or protected by a clearly defined public policy under Iowa law. For the reasons stated below, we affirm the order of the district court.

Jurisdiction in the district court was proper based upon 28 U.S.C. §§ 1331, 1367(a). Jurisdiction on appeal is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

IHCC is a public employer. Lindenmayer was at all relevant times the Vice President of Personnel and Administration at IHCC. Koehn began working at IHCC as a night shift custodian in March 1984. As of July 12, 2001, Koehn was an employee in good standing at IHCC and, on that date, was offered a continuation of his "at will" employment with a standard increase in salary and benefits, subject to, among other things, his continued satisfactory job performance. On August 9, 2001, in compliance with state law, IHCC published in a local newspaper its annual statement of disbursements, including a list of IHCC employees and their salaries.

In the early morning hours of August 24, 2001, Koehn was working the night shift at IHCC. He had with him the August 9, 2001, newspaper which contained the IHCC annual statement of disbursements. At approximately 1:30 a.m., Koehn and two other night shift custodians were taking a regular meal break together, and they examined the employee salary list in the newspaper that Koehn had brought to work. One of them highlighted the salaries of numerous IHCC employees of interest to them, including some of the custodial staff and supervisors. Shortly thereafter, an assistant custodial supervisor on the night shift entered the room and saw the highlighted list. Upon seeing that his compensation was less than several other night shift custodians, he became upset. Another supervisor learned about the incident and reported it to Lindenmayer. Lindenmayer discussed the matter with some of the

-2-

custodians and then decided to terminate Koehn. At the time of his termination, Koehn was told by Lindenmayer that he was an "antagonist" and that his services were no longer needed.

Koehn filed a "prohibited practices complaint" with the Iowa Public Employment Relations Board (PERB), alleging that IHCC terminated him for exercising rights granted under the Iowa Public Employment Relations Act.[2] While that matter was pending before the PERB, Koehn filed the present action in federal court, pursuant to 42 U.S.C. § 1983, alleging that defendants' actions violated his constitutional right to free speech (Count I) and violated state public policy (Count II). Defendants moved for summary judgment on both counts, and the district court granted their motion. This appeal followed.

We review a grant of summary judgment *de novo*. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. See Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990).

Upon *de novo* review, we agree with the district court that, although the IHCC employee salary list could be viewed as a topic of public interest or concern, the evidence showed beyond dispute that Koehn was "speaking solely as an employee–and not as a concerned taxpayer" when he engaged in a conversation with co-workers during a break regarding various IHCC employees' salaries. Slip op. at

---

[2]The PERB subsequently dismissed Koehn's complaint. See slip op. at 3.

8. As the district court noted, Koehn did not question the salaries as a misuse of public funds, call for reforms in the method of determining salaries, or otherwise voice any criticisms or concerns about the published salaries. Id. at 8-9. Accordingly, the district court concluded as a matter of law that Koehn did not engage in constitutionally protected speech. We agree with the district court's conclusion. See, e.g., Tuttle v. Missouri Dep't of Agric., 172 F.3d 1025, 1033-34 (8th Cir.) (affirming judgment as a matter of law for the defendants on the plaintiff's claim that he was terminated in violation of his right to free speech; holding that, although the plaintiff had engaged in speech addressing salaries, promotions, and safety issues, that speech was not constitutionally protected because the plaintiff "was speaking out as an employee, not as a concerned citizen"), cert. denied, 528 U.S. 877 (1999).

Regarding Koehn's state law claim, the district court recognized that, even though Koehn was an at-will employee, he may recover on a claim for wrongful discharge under Iowa law if he can establish, among other things, that his termination violated a clearly defined public policy of the state. See, e.g., Davis v. Horton, 661 N.W.2d 533, 535-36 (Iowa 2003) (an at-will employee asserting wrongful discharge based on violation of public policy must establish, among other things, that the discharge was the result of engaging in an activity that is protected by a clearly defined public policy); Teachout v. Forest City Community School Dist., 584 N.W.2d 296, 299-300 (Iowa 1998) ("the employee's activity must advance a well-recognized and defined public policy of the state"). Koehn describes the pertinent public policy as follows: "Iowa law clearly promotes the free dissemination of information regarding government spending and promotes citizen knowledge and discussion of public expenditures." Brief for Appellant at 28. The district held, and we agree, that Koehn's state law public policy claim fails as a matter of law for the same reason that his First Amendment claim fails as a matter of law. When Koehn conversed with co-workers about IHCC employee salaries, he was speaking merely as an employee, not as a citizen or taxpayer advancing the dissemination of information or public

-4-

discourse regarding government spending.  In sum, Koehn cannot establish that he engaged in  an activity protected by a clearly defined public policy under Iowa law.

The order of the district court is affirmed.

_____