James H. **OPPLIGER** and Gayle Oppliger, Plaintiffs,

v.

**UNITED STATES of America,** Defendant.

United States of America, Plaintiff,

v.

James H. Oppliger and Gayle Oppliger, Defendants.

Nos. 8:06CV750, 8:08CV530.

United States District Court, D. Nebraska.

March 1, 2010.

Brian J. Brislen, Daniel J. Waters, Robert J. Murray, Lamson, Dugan Law Firm, Omaha, NE, for Plaintiffs.

Mary E. Bielefeld, Olivia R. Hussey, Sean M. Green, Washington, DC, for Defendant.

## MEMORANDUM AND ORDER

JOSEPH F. BATAILLON, Chief Judge.

This matter is before the court on motions for summary judgment filed by the United States in each of these cases. 8:06CV750, Filing No. 62; 8:08CV530, Filing No. 39. James and Gayle Oppliger have filed briefs in opposition to both motions, and both parties have filed indices in support of their respective positions. These cases are related and the motions will be decided together as they are virtually identical.

The Oppligers filed the first of these cases, 8:06CV750, asking for a refund of money paid to the Internal Revenue Service, pursuant to 26 U.S.C. § 6672. The assessments involved a business known as Livestock Feed Company ("LFC") that leased employees to Double O, Inc., a trucking company. Employment taxes for 13 consecutive quarters from January of 1999 through March of 2002 were not paid. The United States then assessed the Oppligers (Jim Oppliger in 2006 and Gayle Oppliger in 2005) pursuant to 26 U.S.C. § 6672 individually for these taxes in the amount of $2,363,704. The United States then filed the second suit, 8:08CV530, to reduce to judgment the officer penalty assessments against the Oppligers concerning Double O, the related trucking company. The United States contends that the Oppligers failed to pay taxes for the 17 consecutive quarters from January of 1998 through March of 2002, and the United States assessed them personally for penalties under IRC § 6672 in the amount of $27,013.

The Oppligers contend they are not liable for employment taxes for either LFC or Double O and ask for a refund of payments made toward the LFC assessments. They argue that a bookkeeper, Mary Kerkman, embezzled money, and changed and withheld accounting information that kept them from knowing the employment taxes had not been paid. The court will assume for purposes of this motion that Kerkman did in fact withhold information, mislead the Oppligers, misinform the Oppligers, commit fraud, embezzled, and supplied incorrect information regarding payment of payroll taxes.

The Oppligers hired Mary Kerkman to perform the accounting and bookkeeping responsibilities, including payment of payroll taxes, of both companies. Kerkman provided the Oppligers with flash reports which gave snapshots of the current financial situation of the companies on a weekly basis. The Oppligers contend that these flash reports were false and fraudulent. However, it appears that Mary Kerkman did not embezzle more than $10,000 which is a small sum of money compared to the amount due. Kerkman committed suicide on April 3, 2002.

## STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. If the moving party meets the initial burden, the burden then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Id.* at 249–52, 106 S.Ct. 2505 (1986) (noting the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Id.* at 250–51, 106 S.Ct. 2505.

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir.2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir.2004).

## DISCUSSION

26 U.S.C. §§ 3102(a) and 3402(a) of the Internal Revenue Code ("IRC") requires the employer to withhold income and Social Security taxes from wages and to pay them into the government. An employer acts wilfully when it pays employees and creditors instead of the IRS, because the employer cannot prefer the creditors instead of paying the employ-

ment tax liability. *Honey v. United States*, 963 F.2d 1083, 1092 (8th Cir.1992). To be personally liable under § 6672, one must be (1) a responsible person, and (2) act willfully in not paying the taxes. *Ferguson v. United States*, 484 F.3d 1068, 1072 (8th Cir.2007); *Kizzier v. United States*, 598 F.2d 1128, 1132 (8th Cir.1979). The Eighth Circuit has held that you are a responsible person even if you did not become aware of the delinquency until a later date. *Kizzier*, 598 F.2d at 1133.

### A. Responsible Person

■ The first issue is whether the Oppligers are responsible persons who were required to collect payroll taxes for LFC for 1999, 2000, 2001 and the first quarter of 2002, and for Double O for 1998, 1999, 2000, 2001 and the first and fourth quarters of 2002 within the meaning of §§ 6671 and 6672 of the IRC. The persons who fail to collect and pay these taxes may be made personally liable to a penalty that equals the amount of the delinquent taxes. *Slodov v. United States*, 436 U.S. 238 244–45, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978); *Olsen v. United States*, 952 F.2d 236, 241 (8th Cir.1991). To be a responsible person, that person must have significant control over the funds. *Donelan Phelps & Co. v. United States*, 876 F.2d 1373, 1376–77 (8th Cir.1989). Delegation of such authority does not relieve one of responsibility. *Keller v. United States*, 46 F.3d 851, 854 (8th Cir.1995). This court has looked at such factors as: position and role in company, attendance at high-level executive meetings, involvement in management, compensation, ability to hire and fire employees, perception as person in charge, check signing authority, signing security agreements, personal guarantees, signing withholding reports, arrangement of bank financing, execution of contracts, reviewing books, collecting on accounts, making improvements. *See Malone v. United States*, 1986 WL 15949 *4 (D.Neb.1986); *Donelan*

*Phelps v. United States*, 876 F.2d 1373, 1376 (8th Cir.1989); *Kizzier*, 598 F.2d at 1132.

■ The court finds that the Oppligers are responsible persons within the meaning of IRC § 6672. During the periods in question, Gayle Oppliger, one of the owners, was the only employee paid directly by Double O. LFC was formed to be the payroll company for Double O in January 1997. All employees previously paid through Double O, except Gail Oppliger, were then paid through LFC. LFC's sole function was to issue payroll checks and to lease employees to Double O. Everything else remained the same including the employees, trucks, operations, office space, and maintenance of documents. The Oppligers formed the companies, held offices and managed the day-to-day business. The Oppligers each owned 50% of Double O, were the only shareholders, and were the directors of Double O. Jim Oppliger was the president and Gayle Oppliger the secretary of Double O. The Oppligers were also the creators of LFC. Jim Oppliger was the manager of LFC and the Oppligers had authority to hire and fire employees. The Oppligers attended executive and partnership meetings, called the meetings, and signed the minutes. Both Oppligers possessed the authority to sign tax returns on behalf of both Double O and LFC. They signed payroll checks for both companies. They also signed for bank notes and on security agreements and served as personal guarantors. Based on these facts and the relevant law, the court finds that both Oppligers are responsible parties.

### B. Willful Failure to Collect and Pay

■ The second issue is whether the Oppligers willfully failed to collect and pay the payroll taxes discussed above pursuant to §§ 6671 and 6672 of the IRC. Following

the death of Kerkman, Jim Oppliger took over as the person who did the employment tax returns and paid the employment taxes. On April 4, 2002, an IRS revenue officer, Susan Fox, drove to Double O and informed the Oppligers that they owed payroll taxes for the quarters at issue in this lawsuit. The Oppligers then sold the assets of Double O, but none of the proceeds were used to pay for the payroll taxes.[1] Thereafter, over the next six months, the Oppligers allowed $2,117,640.43 to be paid out of the LFC checking account in employee compensation. They also paid third-party creditors during this period of time in the amount of $3,240,138.60.

"A responsible person acts willfully within the meaning of § 6672 whenever he [ (1) ] 'acts or fails to act consciously and voluntarily and with knowledge or intent that as a result ... trust funds belonging to the government will not be paid over but will be used for other purposes,' ... [or, (2) ] by proceeding with a 'reckless disregard of a known or obvious risk that trust funds may not be remitted to the government.' " *Olsen,* 952 F.2d at 240 (citations omitted). "The term willfully does not connote a bad or evil motive, but rather means a voluntary, conscious, and intentional act, such as the payment of other creditors in preference to the United States." *Elmore v. United States,* 843 F.2d 1128, 1132 (8th Cir.1988); *see also Honey,* 963 F.2d at 1087 (same).

It is clear that the Oppligers knew of their payroll tax liability at least by April 4, 2002, when the Internal Revenue officer arrived at their business, or by April 29, 2002, when they filed their Form 941 for the first quarter of 2002 which showed a balance due of $291,926.24, and at the latest July or August 2002, when the late Form 941s were filed. Forty-five days later the assets of Double O were sold.

The Oppligers argue they were entitled to continue running their business. Nevertheless, the Oppligers paid employees and third-party creditors rather than the IRS. Such knowledge and subsequent payments to employees and third-party creditors connote willfulness. *Honey,* 963 F.2d at 1087; *Olsen,* 952 F.2d at 240.

The Oppligers argue that at the close of business on April 4, 2002, when they learned of the tax deficits, LFC and Double O had bank balances of $3,426.29 and $4,632.73, respectively, with checks written in the amount of $124,165.36 and $10,323.94. See Filing No. 50, 8:08CV530, Ex. 11. Decl. of Anna Palmer at ¶¶ 7–9. Accordingly, the Oppligers argue that had no liability under IRC § 6672.

The court disagrees with the Oppligers. The Oppligers knew by April 4, 2002, when the Internal Revenue Service showed up at their doorstep that there were outstanding employment taxes due and owing. Yet, again as substantiated by the government, the Oppligers used over three million dollars to pay other creditors and employees and did not pay the United States employment taxes. *See Kizzier,* 598 F.2d at 1134 (responsible person must pay withholding taxes, and is willful as a matter of law, if creditors preferred after IRS makes them aware taxes have not been paid). The court finds as a matter of law that the Oppligers acted willfully when they made such payments to creditors without first making payments for the payroll taxes due and owing to the United States.

IT IS ORDERED that the motions for summary judgment filed by the United States in each of these cases, 8:06CV750, Filing No. 62; 8:08CV530, Filing No. 39, are granted. The United States is ordered to submit a proposed judgment to

---

1. It should be noted that the Oppligers did    pay two quarters of payroll taxes.

this court within seven days of the date of this Memorandum and Order.[2]

---

**2.** Such judgment shall relate back to April 4, 2002, when the Oppligers were first informed by the Internal Revenue agent of the deficiencies.