In the Matter of MAJOR LEASING, INC., Debtor.

NCNB NATIONAL BANK OF NORTH CAROLINA, Movant,

v.

MAJOR LEASING, INC., Respondent.

Bankruptcy No. A90–15155–ADK.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

May 30, 1991.

Gus H. Small, Jr., William James Reedy, Small & White, Atlanta, Ga., for movant.

Charles E. Campbell, J. Michael Levengood, Hicks, Maloof & Campbell, Atlanta, Ga., for respondent.

## ORDER

A. DAVID KAHN, Chief Judge.

The above-styled contested matter is before the Court on the Motion for Relief from Stay and to Prohibit Use of Cash Collateral filed by NCNB National Bank of North Carolina ("NCNB"). A hearing was held on February 12, 1991, at which time the Court heard evidence and argument of counsel. The Court also requested briefs on the issue of whether NCNB has a validly perfected security interest in certain property of Debtor.

Between January, 1986, and August, 1989, NCNB established a line of credit with Shamrock Leasing Corporation ("Shamrock"), a North Carolina corporation, and advanced several million dollars to Shamrock. Shamrock used the advances under the line of credit to purchase vehicles which it then leased to its customers. Shamrock granted to NCNB a first priority security interest in the vehicles, vehicle leases, and proceeds thereof to secure the monies it had borrowed from NCNB under the line of credit, and NCNB perfected its interest in North Carolina. In August of 1989, Shamrock sold its lease and vehicle inventory to Major Leasing, Inc. ("Debt-or"), a corporation with its principal place of business in Georgia. NCNB knew of but did not consent to the conveyance of the lease and vehicle inventory to Debtor, nor did it file any financing statements in Georgia to perfect its security interest in Debtor's property. The issue now before the Court is whether NCNB was required to file new financing statements in Georgia after the property was transferred to Debtor. It is undisputed that the chattel paper involved is in the form of vehicle lease agreements, vehicle orders and schedules, notes, assignments, and the proceeds thereof (the "Collateral") collected by Debtor both before and after the filing of its Chapter 11 petition.

Debtor asserts that Section 9–103(3)(e) of the Uniform Commercial Code, as adopted by both Georgia (O.C.G.A. § 11–9–103(3)(e)) and North Carolina (North Carolina Statutes Annotated § 25–9–103(3)(e)), should apply to the transaction with the result that NCNB should have reperfected its interest in Georgia within four months after the transfer of the collateral to Debtor. U.C.C. Section 9–103(3)(e) provides as follows:

> A security interest perfected under the law of the jurisdiction of the location of the debtor is perfected until the expiration of four months *after a change of the debtor's location to another jurisdiction,* or until perfection would have ceased by the law of the first jurisdiction, whichever period expires first. Unless perfected in the new jurisdiction before the end of that period, it becomes unperfected thereafter and is deemed to have been unperfected as against a person who became a purchaser after the change.

(emphasis added).

NCNB asserts that Section 9–402(7) of the Uniform Commercial Code, as adopted in part by both North Carolina (North Carolina Statutes Annotated § 25–9–402(7)) and Georgia (O.C.G.A. § 11–9–402(7)), should apply to the transaction with the result that NCNB did not have to reperfect its interest in Georgia within four months after the transfer. The third sentence of

U.C.C. Section 9–402(7) states that "a filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer." Official Comment 8 to § 9–402 elaborates as follows:

Subsection (7) also deals with a different problem, namely, whether a new filing is necessary *where the collateral has been transferred from one debtor to another.* This question has been much debated in pre-Code law and under the Code. This Article now answers the question in the negative. Thus, any person searching the condition of the ownership of a debtor must make inquiry as to the debtor's source of title, and must search in the name of a former owner if circumstances seem to require it.

(emphasis added).

In *In re Granny Frannies,* 39 B.R. 377 (Bankr.D.S.C.1984), the Court, interpreting U.C.C. § 9–402(7), held that when a creditor has perfected its security interest by properly filing a financing statement and the debtor, without the creditor's consent, removes the collateral from its original location or transfers title to the collateral, the creditor's perfected security interest continues. *Id.* at 380. Another court has concluded that Section 9–402(7) tells the secured creditor that once four months have elapsed from the date of the transfer there may be a need to reperfect as to after-acquired property, but there is no refiling requirement in order to remain perfected in the specific collateral transferred by the debtor. *See In re Meyer–Midway, Inc.,* 65 B.R. 437 (Bankr.N.D.Ill.1986).

This Court is inclined to apply Section 9–402(7) to the case *sub judice.* If the language of a statute is clear, that language must be given effect, at least in the absence of a patent absurdity. *See I.N.S. v. Cardoza Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). A plain reading of Section 9–402(7) reveals that it is applicable when a debtor has transferred collateral encumbered by a security interest to another debtor. Neither Debtor nor Shamrock have changed locations; only the collateral has moved. Because Section 9–402(7) applies to transfers of collateral, NCNB's financing statements remain effective with respect to the collateral transferred to Debtor by Shamrock notwithstanding NCNB's knowledge of the transfer. The fact that the collateral was transferred to another state does not change this result. Section 9–402(7) does not distinguish between intrastate and interstate transfers of collateral in determining whether reperfection is necessary, and this Court will not create a distinction where one does not exist.

Based on the evidence presented at the hearing held on February 12, 1991, and on arguments of counsel, the Court concludes that NCNB's claim is undersecured and that the payments which are being made by Debtor to NCNB do not provide adequate protection inasmuch as they are proceeds from the leases which secure NCNB's debt. The Court further concludes that NCNB's collateral is depreciating and that Debtor cannot adequately protect NCNB's interest given Debtor's present situation and its inability to use cash collateral by prior order of this Court. The Court notes that Debtor has filed a Motion to Dismiss which has been scheduled for hearing on June 12, 1991. Thus, it is apparent that Debtor will not attempt to file a plan of reorganization in this case. Therefore

IT IS THE ORDER OF THE COURT that NCNB was not required to reperfect its security interest after the property was transferred to Georgia.

IT IS THE FURTHER ORDER OF THE COURT that NCNB's Motion for Relief from Stay and to Prohibit Use of Cash Collateral be, and the same hereby is, GRANTED. All payments made to NCNB by Debtor, both pre-petition and post-petition, are part of NCNB's collateral and properly paid to NCNB.

The Clerk is hereby directed to serve Debtor, Debtor's attorney, NCNB's attorney, and the United States Trustee.

IT IS SO ORDERED.