963 F.2d 1083
 69 A.F.T.R.2d 92-1333, 92-1 USTC P 50,253,
18 UCC Rep.Serv.2d 618,
Unempl.Ins.Rep. (CCH) P 16641A
 Charles L. HONEY, Plaintiff-Appellee,
v.
UNITED STATES of America, Defendant-Appellant.
UNITED STATES of America, Counterclaimant-Appellant,
v.
Charles L. HONEY and James W. Meador, Counterdefendants-Appellees.
 No. 91-1782.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 9, 1991.
Decided May 7, 1992.
 
 Bridget N. Rowan, Washington, D.C., argued (Gary R. Allen and Richard Farber, on the brief), for defendant-appellant.
 Eugene G. Sayre, argued, Curtis Bowman and Philip Miron, Plastiras, Hyden & Miron, Little Rock, Ark., for plaintiff-appellee Honey.
 Barry D. Barber, McKenzie, McRae & Vasser, Prescott, Ark., for counterdefendant-appellee Meador.
 Before LAY,* Chief Judge, WOLLMAN and HANSEN, Circuit Judges.
 HANSEN, Circuit Judge.
 
 
 1
 Appellant United States of America, on behalf of the Internal Revenue Service (IRS), appeals from an order and judgment of the district court regarding appellees Charles L. Honey (Honey) and James W. Meador's (Meador) (collectively "taxpayers") liability under 26 U.S.C. § 6672 (1986), for withholding taxes unremitted by Phoenix Housing Systems, Inc. (Phoenix). We reverse.
 
 I. BACKGROUND
 
 2
 Phoenix was incorporated on November 27, 1984, by Honey, Charles White (White), and F. Peter Lee (Lee). Lee, the president and chief executive officer, was responsible for the day-to-day operations of Phoenix. Honey was named vice-president and secretary/treasurer but had few responsibilities other than as legal counsel. White was the bookkeeper for Phoenix. In April of 1985, Meador was hired by Phoenix as vice-president of finance. During the entirety of its existence, Phoenix did not remit any withheld Federal Insurance Contributions Act (FICA) or income taxes to the IRS as required by 26 U.S.C. §§ 3102 and 3402 (collectively "employment taxes").
 
 
 3
 In late October of 1985, Lee disappeared, and Meador took over the day-to-day operations of Phoenix. Meador discovered in early November that the withheld employment taxes had not been remitted to the IRS. Meador informed Honey that the taxes had not been remitted.[1] The decision was made either by Honey and Meador or by Meador alone with knowledge on Honey's part to pay Phoenix's employees, suppliers, and other general creditors in an effort to continue operations while they sought an investor to purchase Phoenix.[2] Between November 1, 1985, and late December 1985, approximately $114,000 was disbursed from Phoenix's general corporate account with the First National Bank of Hope to pay employees, suppliers, and other general creditors. Approximately the same amount was deposited into Phoenix's account during this period. The corporation's short life ended in late December 1985, when two of Phoenix's lenders seized the corporation's assets.
 
 
 4
 On June 20, 1988, the IRS assessed Honey, Meador, and Lee for $112,375.49 in unpaid employment taxes for the second, third, and fourth quarters of 1985. Honey paid a portion of the assessed taxes and filed a claim with the IRS for refund and abatement. The IRS disallowed Honey's claim and Honey commenced this suit. The United States countersued Honey, Meador, and Lee for the unpaid portion of the assessment. Lee was subsequently dismissed due to the inability of the United States to obtain service of process.
 
 
 5
 In order to be personally liable under § 6672 for unpaid employment taxes, a person must be considered "responsible" and must have willfully failed to collect or pay over the taxes. See Olsen v. United States, 952 F.2d 236, 239 (8th Cir.1991); Kizzier v. United States, 598 F.2d 1128, 1132 (8th Cir.1979). Answering interrogatories, the jury found that Honey and Meador were responsible persons for the entirety of the assessed period but had acted willfully only after October 31, 1985. No appeal is taken from the jury's findings.
 
 
 6
 By agreement, the parties reserved for the court the question of whether Phoenix had any "unencumbered funds" available after October 31, 1985, to pay the taxes collected and due prior to that date. The trial court noted that if unencumbered funds were available to Phoenix after October 31, 1985, and were not used to pay the tax deficiency which accrued prior to that date, then Honey and Meador, as responsible persons prior to that date, are personally liable for the tax deficiency to the extent of the unencumbered funds. See Kizzier, 598 F.2d at 1134; Mazo v. United States, 591 F.2d 1151, 1154 (5th Cir.), cert. denied, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). The trial judge determined that no unencumbered funds were available after October 31, 1985. The United States appeals from the trial judge's ruling that Phoenix had no unencumbered funds after October 31, 1985.
 
 
 7
 Appellees do not contest their liability for $13,161.10 in employment taxes collected but unremitted during November and December of 1985, and do not appeal from the district court's entry of judgment against them for the unpaid portion of those taxes.
 
 II. DISCUSSION
 A. GENERALLY
 
 8
 An employer is required to withhold FICA and federal income taxes from its employees' wages. 26 U.S.C. §§ 3102, 3402. Those collected taxes constitute a trust in the hands of the employer. 26 U.S.C. § 7501. The Internal Revenue Code provides:
 
 
 9
 Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.
 
 
 10
 26 U.S.C. § 6672(a) (1986).
 
 
 11
 "A responsible person acts willfully within the meaning of § 6672 whenever he 'acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes,' ... [or] by proceeding with a 'reckless disregard of a known or obvious risk that trust funds may not be remitted to the government.' " Olsen, 952 F.2d at 240 (citations omitted). "The term willfully does not connote a bad or evil motive, but rather means a voluntary, conscious, and intentional act, such as the payment of other creditors in preference to the United States." Elmore v. United States, 843 F.2d 1128, 1132 (8th Cir.1988).
 
 
 12
 The parties dispute whether the trial court placed the burden on the United States to prove that unencumbered funds were available or placed the burden on the taxpayers to prove that all funds available were encumbered. The failure to use unencumbered funds to satisfy a preexisting employment tax liability is part of being willful. Although willfulness is usually a question of fact, "[e]vidence that the responsible person had knowledge of payments to other creditors, including employees, after he was aware of the failure to pay over withholding taxes is proof of willfulness as a matter of law." Olsen, 952 F.2d at 240 (citations omitted). See also Hochstein v. United States, 900 F.2d 543, 548 (2d Cir.1990). Once the IRS makes an assessment of liability, the taxpayer bears the burdens of production and persuasion as to all issues, including the lack of willfulness. Ruth v. United States, 823 F.2d 1091, 1093 (7th Cir.1987) (citing cases); Anderson v. United States, 561 F.2d 162, 165 (8th Cir.1977). Thus, the taxpayer has the burden to prove that all potentially available funds were encumbered. Cf. Mazo, 591 F.2d at 1156 n. 2 ("The taxpayers neither alleged nor offered any evidence that these funds [in the bank account] were encumbered or otherwise restricted so that they were unavailable for payment of withholding taxes.").
 
 
 13
 During the trial, the district court noted on several occasions that the burden of proof, including the burden "to show that funds were not available," was on the taxpayers. Although not explicit in the written order, we find that the trial court did place the burden on the taxpayers to prove that the available funds were encumbered.
 
 
 14
 The district court's conclusion that no unencumbered funds existed is a mixed question of law and fact. The definition of "unencumbered" is a legal issue subject to de novo determination. The factual question is whether any funds meeting that definition existed. As will be discussed, under the facts of this case, we conclude as a matter of law that Phoenix had adequate unencumbered funds after October 31, 1985, to satisfy the tax obligation which had accrued prior to October 31, 1985.
 
 
 15
 B. THE RELATIONSHIP BETWEEN BEING A "RESPONSIBLE PERSON," BEING "WILLFUL," AND UNENCUMBERED FUNDS
 
 
 16
 The taxpayers argue that they are liable only to the extent of the unencumbered funds in existence on October 31, 1985 and not for any funds acquired by Phoenix after October 31, 1985. However, the taxpayers have not challenged the district court's ruling against them on this issue by filing a cross-appeal. We discuss this issue solely for the purpose of lending meaning to our later discussion of the definition of "unencumbered funds" under the facts of this case.
 
 
 17
 The taxpayers cite to Slodov v. United States, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978), wherein the United States Supreme Court rejected the government's argument that a trust to pay the preexisting tax liabilities was imposed on all cash received by the corporations after a taxpayer assumes control of a corporation and becomes both responsible and willful.
 
 
 18
 [A] "responsible person" under § 6672 may violate the "pay over" requirement of that statute by willfully failing to pay over trust funds collected prior to his accession to control when at the time he assumed control the corporation has funds impressed with a trust under § 7501, but that § 7501 does not impress a trust on after-acquired funds, and that the responsible person consequently does not violate § 6672 by willfully using employer funds for purposes other than satisfaction of the trust-fund tax claims of the United States when at the time he assumed control there were no funds with which to satisfy the tax obligation and the funds thereafter generated are not directly traceable to collected taxes referred to by that statute.
 
 
 19
 Slodov, 436 U.S. at 259-60, 98 S.Ct. at 1791-92.
 
 
 20
 In Elmore v. United States, we applied Slodov and found that at the time Elmore simultaneously became both responsible and willful, the corporation's bank balance was positive but was encumbered by outstanding checks written prior to the time Elmore became both responsible and willful, and thus Elmore was not liable under § 6672. Elmore, 843 F.2d 1128, 1133 (8th Cir.1988). In Kenagy v. United States, we expanded upon this point:
 
 
 21
 A responsible person generally may not be penalized with respect to unpaid taxes accruing prior to the date s/he became a responsible person in an amount more than the unencumbered funds of the corporation in existence at that date. Unencumbered funds are those funds available after taking into account outstanding transactions.
 
 
 22
 Kenagy, 942 F.2d 459, 465 (8th Cir.1991) (citing Slodov and Elmore ).
 
 
 23
 However, the facts of Slodov, Elmore, and Kenagy are distinguishable from the facts of this case. Those cases look to the point in time at which the taxpayer became a responsible person and look to whether there were unencumbered funds available as of that date to pay the tax liability accrued prior to the time the taxpayer became a responsible person. If such unencumbered funds exist, the taxpayer is personally liable under § 6672 for the tax liability to the extent of any unencumbered funds used for any purpose other than satisfying that liability.
 
 
 24
 The facts of our decision in Kizzier are very similar to this case. Kizzier was the sole shareholder and the president and treasurer of Titan, a corporation. Kizzier was assessed under § 6672 for unremitted employment taxes for the last quarter of 1973 and the first three quarters of 1974. Kizzier was a responsible person throughout the entirety of this period. In March of 1974, Kizzier first learned that Titan had not remitted its previously withheld employment taxes to the IRS. Citing Mazo v. United States, 591 F.2d 1151 (5th Cir.), cert. denied, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979), we held that "Kizzier's responsibility to pay Titan's withheld employment taxes extended to unencumbered funds received by the corporation after Kizzier learned of Titan's tax delinquency." Kizzier, 598 F.2d at 1134. Olsen also involved a taxpayer who was both responsible and willful for the entirety of the period during which employment taxes were collected but not remitted. Olsen, 952 F.2d at 240-41.
 
 
 25
 In this case, the jury found that Honey and Meador were responsible persons during the entire time the employment tax liabilities accrued. The jury also found that Honey and Meador did not act willfully until after October 31, 1985. In making this latter finding, it is likely, based on the instructions given the jury, that the jury found that Honey and Meador were not aware of the failure to pay over the employment taxes withheld prior to October 31, 1985, until Meador took over the daily operations of Phoenix and were thus not "willful" prior to that date, but that Honey and Meador were "willful" after October 31, 1985, because they did not collect, account for, and pay over employment taxes accruing after that date. However, "[e]vidence that the responsible person had knowledge of payments to other creditors, including employees, after he was aware of the failure to pay over withholding taxes is proof of willfulness as a matter of law." Olsen, 952 F.2d at 240. That aspect of willfulness was not submitted to the jury and was the issue reserved for the district court. The jury's findings are relevant to the question of when Honey and Meador had knowledge that the employment taxes had not been paid over and the question of whether Honey and Meador acted willfully with respect to employment tax liabilities accrued after October 31, 1985. The jury's findings are not dispositive of whether or not Honey and Meador acted willfully in failing to use unencumbered funds acquired after October 31, 1985, to satisfy the tax liability which had accrued prior to that date. The jury was not instructed on or asked to resolve the issue of whether Phoenix had unencumbered funds after October 31, 1985.
 
 
 26
 Since Honey and Meador were responsible persons when the employment tax liabilities accrued, we apply the following rule:
 
 
 27
 Thus, "[i]n the case of individuals who are responsible persons both before and after the withholding tax liability accrues ... there is a duty to use unencumbered funds acquired after the withholding obligation becomes payable to satisfy that obligation; failure to do so when there is knowledge of the liability ... constitutes willfulness."
 
 
 28
 Olsen, 952 F.2d at 240 (citations omitted). See also Thomsen v. United States, 887 F.2d 12, 17-18 (1st Cir.1989); Howard v. United States, 711 F.2d 729, 736 (5th Cir.1983). Slodov's "holding regarding liability for failure to apply after-acquired funds to withholding taxes is limited to the situation of an individual becoming a responsible person after those taxes are payable and trust funds have been dissipated." Mazo, 591 F.2d at 1157. See also Kizzier, 598 F.2d at 1133-34; Davis v. United States, 961 F.2d 867, 871-78 (9th Cir.1992). Thus, Honey and Meador are liable under § 6672 to the extent that Phoenix used unencumbered funds after October 31, 1985, to pay creditors in preference of the IRS.
 
 
 29
 The taxpayers also cite to Matter of King, 91-2 U.S. Tax.Cas. (CCH) P50, 330, 68 A.F.T.R.2d (P-H) 5249, 1991 WL 281726 (Bankr.S.D.Ala.1991). Although King had been a responsible person throughout the entirety of the corporation's existence, the court concluded that he was liable for unpaid employment taxes only to the extent of the unencumbered funds in existence on the date he became willful by acquiring actual knowledge that the taxes had not been paid. King does not recognize that the key issue is when the taxpayer became a responsible person, not when the taxpayer acquired actual knowledge that employment taxes are not being remitted to the IRS. Accordingly, we do not find King persuasive.
 
 
 30
 C. THE DEFINITION OF "UNENCUMBERED FUNDS"
 
 
 31
 This case requires us to set forth a more precise definition of "unencumbered funds." In Kenagy, we stated that "[u]nencumbered funds are those funds available after taking into account outstanding transactions." Kenagy, 942 F.2d at 465. However, the definition of "unencumbered funds" was not a central issue in Kenagy. Kenagy's definition of "unencumbered" serves when the issue is whether any unencumbered funds existed as of the moment the taxpayer becomes a responsible person. That definition is not as helpful when applied to the factual situation we now face. In our previous cases presenting similar factual circumstances, Kizzier and Olsen, we did not have occasion to specifically define "unencumbered funds."
 
 
 32
 In defining "unencumbered funds," we must keep the purpose of § 6672 in mind.
 
 
 33
 [Section] 6672 "is simply a means of ensuring that the tax is paid." ... In keeping with this purpose, § 6672 has been broadly and liberally construed "to prevent the unnecessary loss of tax funds by permitting the 'taxing authority to reach those responsible for the corporation's failure to pay the taxes which are owing.' "
 
 
 34
 Olsen, 952 F.2d at 239 (citations omitted). Thus, our definition of "unencumbered funds" should be a broad one in order to ensure that the taxes are paid.
 
 
 35
 The case law offering a more precise definition for "unencumbered funds" is sparse. In re Premo, 116 B.R. 515 (Bankr.E.D.Mich.1990), sets forth the following definition:
 
 
 36
 Where the taxpayer's discretion in the use of funds is subject to restrictions imposed by a creditor holding a security interest in the funds which is superior to any interest claimed by the IRS, the funds are regarded as encumbered if those restrictions preclude the taxpayer from using the funds to pay the trust fund taxes.
 
 
 37
 Id. at 535.[3] The essential point of this definition is that funds are encumbered only where the taxpayer is legally obligated to use the funds for a purpose other than satisfying the preexisting employment tax liability and if that legal obligation is superior to the interest of the IRS in the funds.
 
 
 38
 We agree with Premo's definition of "unencumbered funds," although we recognize that Premo involves a Slodov fact pattern but applies the rule of Mazo and Kizzier. We do not find, however, that Premo's failure to distinguish these two very different situations should cause us to reject Premo's definition of unencumbered funds. Premo's definition is consistent with the purpose of § 6672 and is clear in its application. Thus, we adopt this definition of "unencumbered funds." We now turn to the application of this definition to the facts of this case.
 
 D. THE SECURITY INTEREST IN PROCEEDS
 
 39
 The taxpayers argue for affirmance on a basis not specifically addressed by the district court's order. It is unclear from the record whether or not the taxpayers raised this argument in the court below. However, "[w]e may affirm a judgment on any ground supported by the record even if not relied upon by the district court." Lane v. Peterson, 899 F.2d 737, 742 (8th Cir.) (citations omitted), cert. denied, --- U.S. ----, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990). We also note that appellant has not argued that review of this contention is precluded by any failure to previously raise this issue.
 
 
 40
 On August 28, 1985, Phoenix obtained a loan in the amount of $90,390.41 from the Merchants & Planters Bank & Trust Company (Merchants). Merchants took a security interest in all of Phoenix's inventory, as well as any proceeds from the sale of such inventory. Honey and Meador argue that all of the funds deposited to Phoenix's account were proceeds from the sale of inventory and were encumbered by Merchants' security interest. As previously discussed, Honey and Meador bear the burden of proving that the funds were encumbered. Charles White, the Phoenix accountant, testified that there were monies received during October, November, and December of 1985, that could have been diverted to payroll taxes, but White could not say that the entire payroll tax liability could have been paid. He also testified that he had no knowledge that the funds were encumbered but could not definitely say they were not encumbered. Meador testified that he did not know if these funds were encumbered.
 
 
 41
 Honey and Meador have not specifically pointed to any evidence in the record proving that any of the money deposited in Phoenix's account was proceeds from the sale of inventory. The only evidence of record suggesting that some of the money deposited was from the sale of inventory is Meador's testimony that Phoenix continued to manufacture and sell houses. The only specific evidence of record as to the source of deposits is that $20,000 deposited on December 20, 1985, was money personally borrowed by Meador from the Bank of Yellville and loaned by Meador to Phoenix.[4] Meador also testified that he put other personal funds into Phoenix, but he did not testify as to when he gave or loaned the corporation those funds or as to the amount of any such funds. Thus, Honey and Meador have not met their burden of proof with respect to the actual amount of funds deposited to Phoenix's account which represented proceeds from the sale of inventory. We find, however, that the evidence permits a reasonable inference that some funds deposited were proceeds from the sale of inventory.
 
 
 42
 Under our test for "unencumbered funds," we are required to ascertain whether Merchants' security interest in proceeds is superior to the interest claimed by the IRS in the funds deposited in Phoenix's account. To do so, we must determine the nature of the IRS's interest in those funds.
 
 
 43
 Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States.
 
 
 44
 26 U.S.C. § 7501(a). The trust established by § 7501 is created when wages to the employees are paid. Begier v. Internal Revenue Serv., 496 U.S. 53, 60-61, 110 S.Ct. 2258, 2264, 110 L.Ed.2d 46 (1990). Generally, funds held in trust under § 7501 are not required to be segregated or specifically identified. Id. 496 U.S. at 61, 110 S.Ct. at 2264. Under some circumstances, the IRS may require that collected employment taxes be segregated in a separate bank account until paid over to the IRS. See 26 U.S.C. § 7512. The IRS did not invoke the provisions of § 7512 in this case. Thus, the funds in Phoenix's general corporation account were not specifically identified as trust fund amounts.
 
 
 45
 Neither did the IRS place a lien on the assets of Phoenix prior to the termination of the corporation's existence, as is provided for in 26 U.S.C. § 6321. The lien under § 6321 generally arises only after the United States makes an assessment for the taxes. See 26 U.S.C. § 6322. There is no evidence that an assessment for the unremitted employment taxes was made prior to the termination of the corporation's existence. Even if the IRS had obtained a tax lien under § 6321, a tax lien is subordinate to "certain perfected security interests in certain collateral, including inventory, arising after the tax lien filing when pursuant to a security agreement entered into before the filing." Slodov, 436 U.S. at 257, 98 S.Ct. at 1790; 26 U.S.C. § 6323(c). The IRS never filed a tax lien, and no argument is made that Merchants' security interest was not perfected. We find that Merchants' security interest in proceeds was superior to the interest of the IRS in the funds in Phoenix's corporate account to the extent that those funds actually were proceeds from the sale of inventory.
 
 
 46
 We must next consider whether Merchants' security interest would have prevented the use of the funds in Phoenix's account for the payment of the tax obligation. Paragraph 6 of the security agreement between Merchants and Phoenix provides that upon Merchants' demand, Phoenix would be required to deposit all payments for inventory sold "in a special bank account maintained with Bank, over which Bank alone has power of withdrawal." Inventory security agreement, para. 6. Except for paragraph 6, the security agreement contains no restrictions on Phoenix's use of the proceeds from the sale of inventory. There is no evidence that Merchants ever invoked paragraph 6. We also note that Doyle Brewer, assistant vice-president for the First National Bank of Hope, testified that he did not know of any restrictions on Phoenix's account which would have prevented the use of funds in that account for payment of the employment tax liabilities. Thus, applying our definition of unencumbered funds, the security agreement, except for the uninvoked paragraph 6, did not place any restrictions on Phoenix's use of the funds in Phoenix's account that would have precluded payment of the tax liability.
 
 
 47
 We also note that once funds were disbursed from Phoenix's account to pay other creditors, Merchants' security interest in those funds would have been extinguished. A security interest in proceeds from inventory is continuously perfected if the security interest in the inventory was perfected, but ceases to be perfected twenty-one days after receipt of the proceeds by the debtor unless "a filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds." Ark.Code.Ann. 4-9-306(3) (1987).[5] However, "a security interest in proceeds remain[ing] in a bank account continues until the funds are actually transferred in the ordinary course of business." Anderson, Clayton & Co. v. First Am. Bank of Erick, 614 P.2d 1091, 1094 (Okla.1980). See also Citizens Nat'l Bank of Whitley County v. Mid-States Dev. Co., Inc., 177 Ind.App. 548, 380 N.E.2d 1243, 1250 (1978); U.C.C. § 9-306 cmt. 2(c)., 3 U.L.A. 441 (1981).
 
 
 48
 We find as a matter of law that while Merchants' security interest in Phoenix's account, to the extent that that account contained proceeds from the sale of inventory, was superior to the interest of the IRS in those funds, there is no evidence that Merchants restricted Phoenix's ability to use those funds to satisfy the preexisting tax obligation.
 
 
 49
 There is also evidence in the record that some proceeds from the sale of homes were made payable jointly to Phoenix and B & R Builders Supply, who was Phoenix's main supplier, and delivered to B & R to cover their materials, with the remainder paid to Phoenix. No argument or evidence has been presented that B & R Builders Supply had any interest in the funds on deposit in Phoenix's corporate account.
 
 E. VIS-A-VIS OTHER GENERAL CREDITORS
 
 50
 We next consider whether the employees, suppliers, and utilities had an interest in the funds superior to the IRS's interest. Honey and Meador have presented no evidence or argument that Phoenix had any legal obligation to use available funds to pay employees, suppliers, and utilities which was superior to its obligation to remit the unpaid employment taxes to the IRS. In Olsen, as in other cases, we held without hesitation that Olsen acted willfully in paying employees and creditors other than the IRS in preference to the payment of the unsatisfied employment tax liability. See Olsen, 952 F.2d at 241. We hold as a matter of law that the interests and rights of the general creditors who were paid from Phoenix's funds were not superior to the interests and rights of the IRS to payment of the unsatisfied employment tax liability.
 
 F. THE TRIAL COURT'S ANALYSIS
 
 51
 In finding that Phoenix had no unencumbered funds after October 31, 1985, the trial court rejected the government's proposal that the court determine the amount of unencumbered funds by adding up the money deposited to or withdrawn from Phoenix's corporate account after October 31, 1985. The trial court set forth a hypothetical in which the use of funds to pay employees and suppliers generates more funds which are used to pay employees and suppliers, ad infinitum, and reasoned that the government's proposed method of proof could result in multiple counting.[6] The court below further found that deposits to the account were encumbered because all of the checks written on Phoenix's account were "force paid" during October, November, and December of 1985. In other words, when checks were presented to the bank for payment there were no funds in the account. The bank held the checks until deposits were made to cover the checks. The trial court reasoned that since funds were subject to the outstanding checks when deposited, those funds were encumbered.
 
 
 52
 We do not accept the trial court's view that all of the funds in Phoenix's account were "encumbered" because the checks were "force paid." In reaching that conclusion, the trial court appears to have relied on Elmore, which is factually dissimilar. In Elmore, the funds in the bank account were considered encumbered only because the checks against those funds were written prior to the time Elmore became a responsible person. In this case, the checks which were "force paid" were written long after Honey and Meador became responsible persons and after the conscious decision was made to use Phoenix's funds to pay creditors other than the IRS. Further, when a person is responsible when the taxes are accrued, we see no distinction between a situation where checks are written before the money to cover those checks is deposited and a situation where the checks are written after the money is deposited. Thus, whether or not checks were "force paid" is irrelevant under the facts of this case.
 
 
 53
 We also disagree with the trial court's conclusion that the possibility of multiple counting precludes the method of proof as to the amount of unencumbered funds proposed by the government. Honey and Meador argue that it is likely that if Phoenix had attempted to pay the IRS instead of its suppliers, utilities and employees, the corporation would have folded immediately and no further sales would have been made, and therefore much of the income received in November and December would not have been earned and would not have been available to pay the back taxes. While there is some appeal in this line of analysis, "[i]t is no excuse that, as a matter of sound business judgment, the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern--the government cannot be made an unwilling partner in a floundering business." Collins v. United States, 848 F.2d 740, 741-42 (6th Cir.1988). See also Thibodeau v. United States, 828 F.2d 1499, 1506 (11th Cir.1987); Mazo, 591 F.2d at 1154 (citing cases). With regard to Honey and Meador's argument that it may be in the best interest of the IRS to keep a financially troubled corporation operational in the hopes that the corporation's finances will improve, there is no evidence in the record that Honey and Meador negotiated with the IRS to waive the IRS's claim under § 6672 in the hope that Phoenix would survive. Cf. Donelan Phelps & Co., Inc. v. United States, 876 F.2d 1373, 1377 (8th Cir.1989). Finally, even if we were to accept the theoretical possibility of multiple counting, the taxpayers would bear the burden of proving that multiple counting actually occurred in this case. Honey and Meador have not met that burden.
 
 G. THE PROPER REMEDY
 
 54
 Honey contends that this court may not reverse and direct that judgment be entered for appellant but may only reverse and remand for a new trial. Honey argues that appellant failed to move for a directed verdict or for judgment notwithstanding the verdict and that that failure limits our options on appeal. We first note that our review of the record discloses that counsel for the government did move for a directed verdict at the close of the case presented by Honey and Meador with respect to both of them and at the close of all of the evidence with respect to Honey only. Second, appellant appeals from the order of the district court regarding whether Phoenix's funds were unencumbered and primarily raises a question of law. To the extent that this appeal raises questions of fact, those questions were reserved to the district court by agreement among the parties. Appellant does not appeal from the jury's findings. Thus, Federal Rule of Civil Procedure 50 regarding motions for directed verdict and for judgment notwithstanding the verdict is not applicable. We do not find our options as limited as counsel for Honey suggests.
 
 III. CONCLUSION
 
 55
 We hold, as a matter of law, that the taxpayers have not met their burden to prove by a preponderance of the evidence that any of the funds deposited or withdrawn from Phoenix's corporate account after October 31, 1985, were encumbered. Accordingly, we reverse the order and judgment of the district court and remand with directions to enter judgment in favor of the United States for the assessed employment tax liability which remains unpaid, plus interest as allowed by law.
 
 
 
 *
 The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed
 
 
 [1]
 The date on which Honey learned that the withheld employment taxes had not been remitted to the IRS was disputed at trial. Honey testified that he did not learn this information until January of 1986. Meador testified that he told Honey of this fact in early November of 1985. The jury's finding that Honey was willful after October 31, 1985, suggests that the jury did not believe Honey's testimony on this issue
 
 
 [2]
 There was also a factual dispute with regard to whether Honey participated in or had knowledge of the decision to pay other creditors instead of the past due tax obligation. Again, the jury's verdict that Honey was willful after October 31, 1985, necessarily implies that the jury found that Honey did at least have knowledge of that decision
 
 
 [3]
 We note that Premo, a bankruptcy case, places the burden on the IRS as a creditor to prove that the funds were unencumbered. See Premo, 116 B.R. at 518-24. We do not discuss this aspect of Premo
 
 
 [4]
 Although there is evidence in the record that the purpose of the loan was to make payroll, there is no evidence that there was any legal obligation attached to that loan to use it only for payroll
 
 
 [5]
 We do not address the question of whether any funds in the account were "identifiable cash proceeds."
 
 
 [6]
 The following is a shortened version of the trial court's hypothetical. Assume that the corporation starts with $1,000 in its account. On Day 1 it buys $900 worth of supplies and pays its employees $100 to build its product. On Day 2 it sells its product for $1,100 and deposits that money in its account. On Day 3 it buys $900 worth of supplies and pays the employees $100 to build another product. On Day 4 it sells that product for $1,100 and deposits that money in its account. At that point, the corporation has spent $2,000 from its account and has deposited $2,200. However, the corporation only has actual funds of $1,200